FILED
United States Court of Appeals
Tenth Circuit

September 15, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DELILA PACHECO,

    Petitioner - Appellant,

v.

ABOUTANAA EL HABTI, Warden,

    Respondent - Appellee.

No. 20-7002

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:16-CV-00450-RAW-KEW)**
_____

Kathleen Shen, Assistant Federal Public Defender (Shira Kieval, Assistant Federal Public Defender, and Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Petitioner - Appellant.

Caroline Hunt, Assistant Attorney General (Ashley L. Willis, Assistant Attorney General, and John M. O'Connor, Attorney General of Oklahoma, with her on the brief), Oklahoma City, Oklahoma, for Respondent - Appellee.

_____

Before **HARTZ**, **SEYMOUR**, and **MORITZ**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Delila Pacheco was convicted in Oklahoma of first-degree child-abuse murder. She sought relief in the United States District Court for the Eastern District of Oklahoma, filing an application under 28 U.S.C. § 2254. While her application was

pending, we decided *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), holding that a large portion of the State of Oklahoma is "Indian country" for purposes of the Major Crimes Act, which provides for exclusive federal jurisdiction over certain enumerated crimes committed by Indians in "Indian country." 18 U.S.C. § 1153(a).[1] Ms. Pacheco—an Indian found to have committed a serious crime at a location since determined to be on an Indian reservation—sought to amend her application to assert a claim that the state courts lacked jurisdiction over the offense.

The district court denied the request to amend on the ground that the new claim was time-barred. We granted a certificate of appealability (COA) on this issue. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring COA to appeal denial of relief under § 2254). Ms. Pacheco argues on appeal (1) that the time bar to her jurisdictional claim should be excused under the actual-innocence exception and, alternatively, (2) that the statute of limitations reset when the Supreme Court declared the underlying law in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), rendering timely her request to amend. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm the

---

[1] Subsection 1153(a) states:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

2

district court's order denying leave to amend because Ms. Pacheco's jurisdictional argument does not show actual innocence, and *McGirt* did not announce a new constitutional right. We deny a COA on any further issues.

## I.    BACKGROUND

In 2014 Ms. Pacheco was tried in Oklahoma state court for first-degree child-abuse murder in connection with the death of her two-year-old foster daughter. *See* Okla. Stat. tit. 21, § 701.7(C). The Oklahoma Court of Criminal Appeals (OCCA) summarized the evidence presented at trial as follows:

> Appellant was convicted of intentionally using unreasonable and lethal force against two-year-old A.H. in the early morning hours of December 8, 2013. Appellant and her husband, Longino Pacheco, lived in rural Cherokee County with their three teenage children. A few months before the homicide, Appellant had obtained custody of A.H. and her three-year-old sister, H.H., who were relatives of Appellant. The child, who slept on the floor beside Appellant's bed, died from internal bleeding caused by blunt-force trauma to her liver; she also had many bruises on her face and body. Appellant told police that on the night in question, the child refused to go to sleep, and she (Appellant) had to get up several times to attend to her. By all accounts, the child had some behavioral problems; for example, she would often gag herself to get attention or to keep from falling asleep. Appellant's husband testified that he heard Appellant spank the child in the middle of the night, and that he heard the child say "owie" around the same time. Nevertheless, neither Appellant nor any other member of the family admitted to having any idea how the child was bruised, or what caused her death.

R., Vol. I at 205. Ms. Pacheco was convicted and sentenced to life imprisonment with the possibility of parole. In 2016 the OCCA affirmed the conviction and sentence.

A few months later Ms. Pacheco filed an application under 28 U.S.C. § 2254 in federal district court. Her only claims alleged insufficient evidence and ineffective assistance of counsel. Then we decided *Murphy*, which held that the Muscogee

3

(Creek) Reservation is Indian country for purposes of the Major Crimes Act, 18 U.S.C. § 1153(a). *See* 875 F.3d at 966. As a result, Oklahoma state courts lacked jurisdiction to try the applicant, a member of the Creek Nation, for a murder that had occurred on the Creek Reservation. *See id.* Although our holding in *Murphy* was limited to the Creek Reservation, the Creek Nation shares its relevant history in Oklahoma with "the other Indian nations that composed the 'Five Civilized Tribes'— the Cherokees, Chickasaws, Choctaws, and Seminoles." *McGirt*, 140 S. Ct. at 2483 (Roberts, C.J., dissenting).

Ms. Pacheco first sought postconviction relief under *Murphy* in state court.[2] Alleging that she was a member of the Cherokee Nation who allegedly committed an offense enumerated in the Major Crimes Act on the Cherokee Reservation, she argued that "the State of Oklahoma was without jurisdiction to charge, try, convict, and sentence her for the major crime of murder in the first degree - child abuse." Aplt. Suppl. Br., Attach. A-2. The state courts denied relief, ruling that Ms. Pacheco's application was premature because the Supreme Court had granted a petition for a writ of certiorari in *Murphy*.

Ms. Pacheco shifted her attention back to federal court. In 2019 she moved for

---

[2] At the parties' request we exercise our discretion to take judicial notice of the documents in Ms. Pacheco's state-court postconviction proceedings, which postdated the initiation of this federal habeas proceeding. See *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly[ ]filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

leave to file a supplemental brief on the same jurisdictional challenge. The district court construed the motion as a motion for leave to amend under Federal Rule of Civil Procedure 15 and denied the motion because it was untimely and the proposed amendment did not relate back to the original pleading. The court denied relief on the other claims in the application, and it denied a COA on January 16, 2020. Ms. Pacheco filed a timely notice of appeal to this court and sought a COA on a number of issues.

On July 9, 2020, the Supreme Court affirmed *Murphy* and decided *McGirt*, which held that the Creek Reservation had never been disestablished and that the land it encompassed remained Indian country for purposes of the Major Crimes Act. *See Sharp v. Murphy*, 140 S. Ct. 2412 (2020) (per curiam); *McGirt*, 140 S. Ct. at 2482 ("The federal government promised the Creek a reservation in perpetuity. Over time, Congress has diminished that reservation. It has sometimes restricted and other times expanded the Tribe's authority. But Congress has never withdrawn the promised reservation."). Armed with this new Supreme Court authority, Ms. Pacheco once more pressed her jurisdictional challenge in state court in a second application for postconviction relief. The trial court found (1) that Ms. Pacheco had one-half Indian blood and was a recognized member of the Keetoowah Band of the Cherokee Nation, making her an Indian for purposes of federal law,[3] and (2) that the crime of

---

[3] *See United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) ("To find that a person is an Indian the court must first make factual findings that the person has 'some Indian blood' and, second, that the person is 'recognized as an Indian by a tribe or by the federal government.'" (citation omitted)).

conviction occurred on the Cherokee Reservation, which is Indian country.[4] But the OCCA ultimately denied relief, citing its recent holding that *McGirt* announced a new procedural rule that was not retroactively applicable and noting that Ms. Pacheco's conviction became final before *McGirt* was decided. *See State ex rel. Matloff v. Wallace*, 497 P.3d 686, 688 (Okla. Crim. App. 2021), *cert. denied sub nom. Parish v. Oklahoma*, 142 S. Ct. 757 (2022).

Meanwhile, on December 7, 2020, this court granted a COA on the following issue:

> whether the district court erred in denying Pacheco's request to amend her habeas application under Federal Rule of Civil Procedure 15 to include a claim that the state court lacked jurisdiction to charge, try, and convict her because she is an Indian, the victim was an Indian, and the crime occurred in Indian country.

Order Granting COA at 1. We appointed counsel and ordered supplemental briefing.

## II.    DISCUSSION

Because Ms. Pacheco is an Indian found to have committed a major offense in Indian country, no party disputes that if she were tried today for the murder of A.H., she would be tried in federal court under the Major Crimes Act.[5] The question is

---

[4] *See Hogner v. State*, 500 P.3d 629, 635 (Okla. Crim. App. 2021) (under reasoning of *McGirt*, Cherokee Reservation has never been disestablished and remains Indian country).

[5] The State does not contest that the conduct for which Ms. Pacheco was prosecuted triggers the Major Crimes Act, so we need not decide which enumerated offense Ms. Pacheco would have been prosecuted under in federal court. *See* 18 U.S.C. § 1153(a) (listing "murder," "manslaughter," and "felony child abuse or neglect" as major crimes). And we need not address what law would govern a hypothetical federal prosecution. *See id.* § 1153(b) ("Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force

whether any "legal doctrines . . . designed to protect those who have reasonably labored under a mistaken understanding of the law," *McGirt*, 140 S. Ct. at 2481, now preclude relief.

### A.    Timeliness of Jurisdictional Claim

The OCCA affirmed Ms. Pacheco's conviction on direct review on April 15, 2016. She filed her § 2254 application in federal court on October 17, 2016. She then moved to file a supplemental brief on November 6, 2019, and she submitted a proposed supplemental brief on November 26 that presented her jurisdictional challenge. Construing the November 2019 filings as a motion for leave to amend under Federal Rule of Civil Procedure 15, the district court determined that the proposed amendment set forth an untimely claim and that the amendment did not relate back to her original pleading. The court therefore denied leave to amend.

We review for abuse of discretion a district court's decision to deny leave to amend a § 2254 application. *See Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994). Because a § 2254 application "may be amended or supplemented as provided in the rules of procedure applicable to civil actions," 28 U.S.C. § 2242, we look to Rule 15 for applicable law. Under Rule 15(a)(1) a pleading may be amended "once as a matter of course" within 21 days after (A) serving the pleading or (B) service of a responsive pleading or preresponse motion. When, as here, Paragraph 15(a)(1) does

---

within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.").

7

not apply, a party may amend only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.* But it may deny leave to amend for the purpose of asserting a new claim if "it is apparent that such a claim would be futile." *Stafford*, 34 F.3d at 1560. For the reasons that follow, we hold that an amendment would be futile.

An amendment would be futile if the new claim sought to be asserted is time-barred. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of, as relevant here, (1) "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2244(d)(1)(A), (C). A proposed claim asserted outside the limitations period is generally time-barred. But an amendment "relates back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). A court therefore should not grant a habeas applicant leave to amend to assert new claims outside AEDPA's limitations period unless there exists "a common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545

8

U.S. 644, 659 (2005) (internal quotation marks omitted).

On appeal Ms. Pacheco does not argue that her jurisdictional claim shares a common core of facts with the claims asserted in her original pleading. But she nevertheless offers two reasons why the district court erred in denying leave to amend on untimeliness grounds, the proposed amendment's failure to relate back notwithstanding. First, she argues that the actual-innocence exception entirely excuses her jurisdictional claim from AEDPA's statute of limitations. Second, she contends that her request to amend was timely because AEDPA's statute of limitations reset when the Supreme Court decided *McGirt*, which she reads as announcing a new constitutional right. We reject both arguments and conclude that the district court did not err in denying the motion for leave to amend.

### 1.    Actual innocence

A proper showing of actual innocence by a habeas petitioner enables the petitioner to pursue a claim that would otherwise be barred on grounds other than the merits. "[T]he petitioner's claim of actual innocence does not serve as the basis for granting habeas relief. Instead, the claim of actual innocence is joined with a procedurally defaulted claim to serve as a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Taylor v. Powell*, 7 F.4th 920, 926 (10th Cir. 2021) (footnote and internal quotation marks omitted); *see McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of

9

limitations."). Also known as the "miscarriage of justice" exception, the actual-innocence exception applies "when a petitioner can demonstrate that he is actually innocent of the crime of conviction." *Taylor*, 7 F.4th at 926. To qualify for the exception, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Ms. Pacheco invokes the actual-innocence exception to excuse the untimely assertion of her jurisdictional claim.[6] But she does not argue innocence based on new evidence that she did not commit child-abuse murder. Rather, she argues that she did not commit the charged crime because she was accused of committing a crime under Oklahoma law and one element of that crime is that the crime (if, as here, committed

---

[6] The State argues that Ms. Pacheco's actual-innocence arguments are waived because she did not mention actual innocence either in district court or in her pro se opening brief in this court. But the district court raised the statute of limitations sua sponte as the basis for denying leave to amend; the court entered judgment on the same day, without giving Ms. Pacheco notice or an opportunity to respond. We agree with Ms. Pacheco that in district court she had no opportunity to argue actual innocence as a ground for excusing untimeliness. *See* Fed. R. Civ. P. 46 ("Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made."). And we are aware of no rule that arguments made in a counseled supplemental brief but not in a prior pro se brief are waived. (If we were to apply such a rule here, there would have been little point in appointing appellate counsel or ordering supplemental briefing in the first place.) Finally, we note that at oral argument counsel for the State acknowledged, "As a practical matter this is a very important issue that we would like resolved." Oral Arg. at 19:45–50. In these circumstances we deem it appropriate to address Ms. Pacheco's actual-innocence claim.

by an Indian) did not occur in Indian country.

Ms. Pacheco's argument is simple and straightforward, and it may be literally accurate.[7] But she cites no case law supporting the proposition that the factual-innocence gateway is available when one has been convicted by the wrong jurisdiction. And, in our view, the rationale behind the gateway does not support its application to conviction by the wrong jurisdiction, at least in the context of this case.

It is essential to recognize that the factual-innocence gateway is an exception

---

[7] There is some question, however, whether an element of the crime alleged against Ms. Pacheco was that it did not occur in Indian country. The Oklahoma statute codifying child-abuse murder lists no element related to Indian status or Indian country. *See* Okla. Stat. tit. 21, § 701.7(C). And the State's highest criminal court has ruled that Oklahoma defendants challenging the state courts' jurisdiction on Major Crimes Act grounds bear the initial burden of production. *See Hogner v. State*, 500 P.3d 629, 631 (Okla. Crim. App. 2021) ("Upon [the defendant's] presentation of *prima facie* evidence as to his legal status as an Indian and as to the location of the crime as Indian Country, the burden shifts to the State to prove it has subject matter jurisdiction."). That approach appears to comport with recent Supreme Court authority framing Indian-country jurisdictional issues as preemption defenses. *See Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2494 (2022) ("[T]he Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country."); *cf. Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) ("Ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law." (internal quotation marks and brackets omitted)). *But see Castro-Huerta*, 142 S. Ct. at 2512 (Gorsuch, J., dissenting) ("Because Tribes are sovereigns, this Court has consistently recognized that the usual standards of preemption are unhelpful. In typical preemption cases, courts start with the assumption that Congress has not displaced state authority. But when a State tries to regulate tribal affairs, the same backdrop does not apply because Tribes have a claim to sovereignty that long predates that of our own Government." (brackets, citations, and internal quotation marks omitted)).

to statutory language that provides no such exception. The gateway is a creation of equity. The historical writ of habeas corpus was a common-law writ, but "its use was equitable in everything but name." Paul D. Halliday, *Habeas Corpus: From England to Empire* 87 (2010). Although a statutory framework in large part governs federal habeas proceedings today, courts retain traditional equitable authority—both to broaden and to narrow avenues of relief. *See, e.g.*, *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) ("While AEDPA announced certain new conditions to relief, it did not guarantee relief upon their satisfaction. Instead, Congress left intact the equitable discretion traditionally invested in federal courts by preexisting habeas statutes."). The actual-innocence exception to the various statutory bars to habeas relief derives from this equitable discretion. *See McCleskey v. Zant*, 499 U.S. 467, 502 (1991) (after determining that claim was procedurally defaulted, Court addresses "whether [it] should nonetheless exercise its equitable discretion to correct a miscarriage of justice"); *Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."); *McQuiggin*, 569 U.S. at 397 ("Equitable principles have traditionally governed the substantive law of habeas corpus. . . . The text of § 2244(d)(1) contains no clear command countering the courts' equitable authority to invoke the miscarriage of justice exception to overcome expiration of the statute of limitations governing a first federal habeas petition." (brackets and internal quotation marks omitted)).

12

One might ask why the Supreme Court limits the innocence gateway to *actual* innocence. Why is it not enough that the defendant could not now be convicted on the original charge? The reasons that conviction could not now be obtained may reflect deep-rooted and compelling principles, such as the bar against double jeopardy or the inadmissibility of unlawfully seized evidence. Yet this court has repeatedly rejected attempts to claim actual innocence based on what we viewed as legal issues: double jeopardy, *see Steele v. Young*, 11 F.3d 1518, 1522 & n.8 (10th Cir. 1993); *Selsor v. Kaiser*, 22 F.3d 1029, 1036 (10th Cir. 1994); instructional error, *see Ellis v. Hargett*, 302 F.3d 1182, 1186 n.1 (10th Cir. 2002) (instruction on self-defense); *Brecheen v. Reynolds*, 41 F.3d 1343, 1356–57 (10th Cir. 1994) (failure to give "presumption of life" instruction in capital case); *Hernandez-Escarsega v. Morris*, 43 F. App'x 181, 184–85 (10th Cir. 2002) (instruction on continuing criminal enterprise); involuntariness of the plea, *see Laurson v. Leyba*, 507 F.3d 1230, 1232–33 (10th Cir. 2007); illegal search and seizure, *see Warren v. United States*, 707 F. App'x 509, 512 (10th Cir. 2017); and the absence of a proper charging document, *see Shayesteh v. City of S. Salt Lake*, 217 F.3d 1281, 1284 (10th Cir. 2000).[8]

---

[8] Two opinions of this court—*Beavers v. Saffle*, 216 F.3d 918 (10th Cir. 2000) and *Ellis*, 302 F.3d 1182—have been read by others as holding that affirmative defenses go only to legal innocence and cannot establish actual innocence. A close review of the cases, however, shows that no precedent of this court has gone so far, although we have rejected claims of actual innocence based on partial affirmative defenses that only reduce the degree of guilt. In *Beavers* we wrote: "Mr. Beavers does not claim that he is innocent of killing [the victim]. Rather, he claims that he is not guilty of first-degree murder because he was intoxicated and acted in self-defense. However, these arguments go to legal innocence as opposed to factual innocence." 216 F.3d at 923. This passage should not be read out of context. Mr.

Beavers did not argue in our court that he was entitled to acquittal on the ground of intoxication or self-defense. Rather, he argued only that intoxication or self-defense would reduce his offense to manslaughter. In particular, with regard to self-defense he cited authority that the crime would only be manslaughter if his belief that he needed to defend himself was unreasonable or if he was not free from blame (say, he started the altercation). In *Ellis* we wrote: "Ellis briefly asserts that his procedural default should be excused [because of actual innocence]. This argument cannot prevail. Ellis does not claim that new evidence shows he is actually innocent of shooting [the victims]. Rather, his claim boils down to asserting that he is legally innocent because his conduct is justified or mitigated by the doctrines of self-defense or heat of passion, on which he maintains the jury was not accurately instructed." 302 F.3d 1186 n.1. We do not read this as saying that Ellis could not have overcome the procedural bar if he had presented new evidence clearly establishing self-defense that negated guilt. He never pointed to new evidence of self-defense or even argued that the evidence of self-defense at trial was compelling. He argued only that the jury instructions on self-defense were unclear regarding the prosecution's burden of persuasion. *See also Black v. Workman*, 682 F.3d 880, 915 (10th Cir. 2012) (rejecting actual-innocence claim because prisoner "could have been convicted of the lesser offense of manslaughter").

We recognize that the Supreme Court has held that a petitioner in a capital case who demonstrates innocence of the death penalty, though not innocence of homicide, may obtain review of an otherwise barred claim challenging the imposition of the death penalty. *See Sawyer v. Whitley*, 505 U.S. 333, 345 (1992) ("Sensible meaning is given to the term 'innocent of the death penalty' by allowing a showing in addition to innocence of the capital crime itself a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met."). But the Supreme Court has treated the death penalty as unique in various respects. *See, e.g., California v. Ramos*, 463 U.S. 992, 998–99 (1983) ("The Court, as well as the separate opinions of a majority of the individual Justices, has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination."); *Beck v. Alabama*, 447 U.S. 625, 637 (1980) (requiring lesser-included-offense instruction: "As we have often stated, there is a significant constitutional difference between the death penalty and lesser punishments[.]"); *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (opinion of Scalia, J., joined by C.J. Rehnquist)) ("Proportionality review is one of several respects in which we have held that 'death is different,' and have imposed protections that the Constitution nowhere else provides.).

When we limit the issue to noncapital cases, one sibling circuit has held that an actual-innocence claim cannot rest on a defense that merely reduces the degree of a defendant's guilt. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1015 (11th Cir. 2012) ("*Schlup*'s actual innocence gateway does not extend to petitioners,

14

The answer is that only factual innocence turns on the moral culpability of the defendant. And it is this moral dimension that engages our equitable sensibilities. The Supreme Court captured this rationale when it stated that "[A] prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992). We agree with Chief Judge King that "the core idea" of actual innocence "is that the petitioner may have been imprisoned for conduct that was not prohibited by law." *Reyes-Requena v. United States*, 243 F.3d 893, 903 (5th Cir. 2001).

In this light, we do not think that equitable principles offer Ms. Pacheco a gateway to escape the statutory bar on her untimely claim. We recognize that as a general rule a claim of actual innocence can be based on the failure to establish an element of the offense on which the defendant was prosecuted. *See Bousley v. United*

---

like Rozzelle, who did the killing and whose alleged actual innocence of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide." (internal quotation marks omitted)). Two others, however, although ultimately ruling against the defendant, have entertained such claims. *See Murden v. Artuz*, 497 F.3d 178, 194–95 (2d Cir. 2007) (considering defendant's claim that he acted out of extreme emotional disturbance, an affirmative defense that would have reduced his second-degree murder conviction to first-degree manslaughter); *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (considering defendant's voluntary-intoxication claim, which would have reduced his conviction from premeditated murder to, at most, second-degree murder).

Notwithstanding these divergent views, the circuits appear to agree that when an affirmative defense negates all guilt, it can support a claim of actual innocence. *See, e.g.*, *Fairman v. Anderson*, 188 F.3d 635, 644–45 (5th Cir. 1999) (self-defense); *Finley v. Johnson*, 243 F.3d 215, 220–21 (5th Cir. 2001) (necessity); *Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999) (insanity); *Jaramillo v. Stewart*, 340 F.3d 877, 883 (9th Cir. 2003) (self-defense).

*States*, 523 U.S. 614, 623–24 (1998); *United States v. Bowen*, 956 F.3d 1091, 1108 (10th Cir. 2019). But jurisdictional elements are different. They are unrelated to moral culpability. As recently stated by the Supreme Court, "Jurisdictional elements do not describe the evil Congress seeks to prevent, but instead simply ensure that the Federal Government has the constitutional authority to regulate the defendant's conduct." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) (internal quotation marks omitted). Ms. Pacheco's actual-innocence claim is not based on evidence regarding what she did, but on where she did it. We take comfort in the limited authority on the issue. The Eleventh Circuit said in a per curiam unpublished opinion that "Jones's argument that the state trial court lacked jurisdiction presents, at most, a claim of legal innocence, not factual innocence, and does not excuse his failure to file his federal petition sooner." *Jones v. Warden*, 683 Fed. App'x 799, 801 (11th Cir. 2017). (Jones had argued that the trial court lacked jurisdiction because the case had not been properly transferred to the judge who presided. *See Jones v. State*, 709 S.E.2d 773, 776 (Ga. 2011).) And we think it relevant that the Supreme Court, although proceeding under an earlier habeas statute and quite different analysis, declined to grant habeas relief to a serviceman convicted in a court-martial proceeding of a crime that was not "service-connected," even though the Court had held after his proceeding that such a charge had to be tried by a jury in a civilian court. *See Gosa v. Mayden*, 413 U.S. 665, 672–86 (1973) (plurality opinion), relied on by *United States v. Cuch*, 79 F.3d 987, 990–94 (10th Cir. 1996) (denying habeas relief to defendants prosecuted in federal court where jurisdiction was predicated on

16

incorrect determination that location of crime was within the boundaries of Indian reservation). We also think it noteworthy that 28 U.S.C. § 2255 specifically recognizes claims "that the court was without jurisdiction," *id.* § 2255(a), but does not except such claims from the one-year limitations period, *see id.* § 2255(f). When Congress enacted the limitations period in AEDPA, it discerned no reason to provide a blanket exception for jurisdictional claims.

Nor are there any particular equities favoring Ms. Pacheco in this case. There is no suggestion of bad faith on the part of the State in exercising jurisdiction to prosecute her. Thousands who had been prosecuted on the mistaken premise that the Cherokee Reservation had been disestablished did not raise a jurisdictional claim, and the dissent in *McGirt* shows that it was not wholly unreasonable to believe that the reservation had been disestablished. To be sure, the prosecution of Ms. Pacheco can be described as an offense to the sovereignty of the Cherokee Nation—a sovereignty that is entitled to the greatest respect from this court. But the most effective cure to this offense to the Nation is the decision in *McGirt* itself, which will govern all future relations between the Nation and the State of Oklahoma. We question whether permitting Ms. Pacheco's untimely claim to go forward can be justified as a remedy for prior intrusions on tribal sovereignty. We leave for another day whether a bad-faith arrogation of sovereignty to prosecute a particular person could be ground for excusing a procedural default in a habeas case.

### 2.      Newly recognized constitutional right

Ms. Pacheco next argues that *McGirt* announced a new rule of constitutional

17

law and that we should make that rule retroactively applicable. She points out that AEDPA's statute of limitations resets on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). If the statute of limitations reset on July 9, 2020, when *McGirt* was decided in the middle of this appeal, then her request to amend would be rendered timely.

But there is at least one fatal flaw to this argument: *McGirt* announced no new constitutional right. It self-professedly resolved a question of "statutory interpretation," 140 S. Ct. at 2474, surveying many "treaties and statutes," *id.* at 2476, to determine that "[t]he federal government promised the Creek a reservation in perpetuity" and "has never withdrawn the promised reservation," *id.* at 2482. The opinion addressed the United States Constitution only to explain Congress's exclusive authority to disestablish Indian reservations. *See id.* at 2462–63. (The Constitution is also mentioned in passing within a quotation from the Oklahoma Enabling Act. *See id.* at 2477.) And although Ms. Pacheco tries to characterize *McGirt* as a decision about due process, the phrase "due process" never appears in the opinion. Moreover, the opinion observed that "Congress remains free to supplement its statutory directions about the lands in question at any time." *Id.* at 2481–82. That observation alone contravenes any notion that *McGirt* announced a new constitutional right—Congress cannot eliminate a constitutional right through ordinary legislation. Ms. Pacheco contends that the *McGirt* ruling "is constitutional,

18

as 'a criminal prosecution in the courts of a state' must be in 'a court of competent jurisdiction' in order to accord with '"due process" in the constitutional sense.'" Aplt. Suppl. Br. at 23 (quoting *Frank v. Mangum*, 237 U.S. 309, 326 (1915)). But it was not *McGirt*, but the notorious opinion in *Frank*, that established the constitutional principle invoked by Ms. Pacheco.

The district court did not err in denying Ms. Pacheco leave to amend.

### B.    Requests for COA on Other Claims

Ms. Pacheco further requests a COA on eight claims unrelated to the jurisdictional issue: (1) the State presented insufficient evidence of guilt; (2) her counsel was ineffective for failing to procure a qualified interpreter; (3) her counsel was ineffective for failing to object to alleged prosecutorial misconduct; (4) her counsel was ineffective for failing to use certain known information to argue reasonable doubt based on the possibility that her husband killed the child; (5) the use of an unqualified interpreter during her husband's testimony violated the Confrontation Clause and Due Process Clause; (6) prosecutorial misconduct denied her a fair trial; (7) the improper admission of evidence denied her a fair trial; and (8) cumulative error. But in district court Ms. Pacheco raised only the first three claims. The other claims are therefore not preserved for our review. *See, e.g.*, *Owens v. Trammell*, 792 F.3d 1234, 1246 (10th Cir. 2015) ("Because the argument was not raised in his habeas petition, it is waived on appeal.").

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the

19

applicant to show that the district court's resolution of the claim was "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). In particular, AEDPA provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

We deny a COA on the three preserved claims. Ms. Pacheco's first claim alleges that the evidence at trial did not establish beyond a reasonable doubt that she, as opposed to someone else in her family, killed A.H. The district court examined the evidence presented at trial and held that the OCCA's rejection of the claim was not contrary to or an unreasonable application of Supreme Court case law; nor was its decision based on an unreasonable determination of the facts in light of the evidence. We cannot say that the district court's decision was debatable or wrong.

Ms. Pacheco's second and third claims allege that trial counsel rendered ineffective assistance by failing to procure a qualified interpreter and failing to object to allegedly improper remarks made by the prosecutor. To prevail on claims of ineffective assistance of counsel, a defendant must show both that her counsel's

performance was deficient—"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—and that "the deficient performance prejudiced [her] defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The OCCA ruled that although the interpreter was unqualified, Ms. Pacheco was not prejudiced because no specific mistranslations by the interpreter were identified. As to the alleged prosecutorial misconduct, the OCCA determined that the challenged remarks were reasonable interpretations of the evidence, that any objection to the remarks would have been futile, and that counsel was not ineffective for failing to make meritless objections. The district court reviewed the record and determined that the OCCA's rulings did not contradict or unreasonably apply Supreme Court case law; nor did its rulings rest upon an unreasonable determination of the facts. Reasonable jurists could not debate the district court's decision.

## III.   CONCLUSION

We **AFFIRM** the district court's order denying leave to amend. We **DENY** a COA on any additional claims.

21