**PUBLISH**

FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 28, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

TIMOTHY SUMPTER,

    Petitioner - Appellee/Cross-
    Appellant,

v.

STATE OF KANSAS,

    Respondent - Appellant/Cross-
    Appellee.

----------------------------

NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS,

    Amicus Curiae.

Nos. 20-3186 & 20-3206

_____

**Appeal and Cross-Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:19-CV-03267-JWL)**
_____

Kurtis K. Wiard, Assistant Solicitor General (Derek Schmidt, Attorney General and
Kristafer R. Ailslieger, Deputy Solicitor General, with him on the briefs), Office of
Attorney General, Topeka, Kansas, for Respondent-Appellant/Cross-Appellee.

Ruth Anne French Hodson of Sharp Law, LLP, Prairie Village, Kansas, for Petitioner-
Appellee/Cross-Appellant.

Norman R. Mueller of Haddon, Morgan and Foreman, P.C., Denver, Colorado and Tyler
J. Emerson and Kari S. Schmidt of Conlee, Schmidt & Emerson, L.L.P., Wichita, Kansas,
filed an amicus curiae brief for National Association of Criminal Defense Lawyers.

_____

Before **HOLMES**, Chief Judge, **KELLY**, and **MATHESON**, Circuit Judges.

_____

**HOLMES**, Chief Judge.

_____

Timothy Sumpter was convicted of aggravated kidnapping, attempted rape, and aggravated sexual battery, arising from his 2011 sexual assault of J.B. in Wichita, Kansas. The controlling sentence was for aggravated kidnapping, a conviction which added over 15 years to Mr. Sumpter's sentence.

After proceeding through the Kansas courts, Mr. Sumpter filed a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, claiming that his convictions were obtained in violation of his constitutional rights. The district court granted in part Mr. Sumpter's petition for relief. Specifically, the district court vacated Mr. Sumpter's aggravated kidnapping conviction but denied his remaining claims. Furthermore, the district court denied Mr. Sumpter's request for a certificate of appealability ("COA") with respect to his unsuccessful claims.

The State of Kansas now appeals from the partial grant of habeas relief; Mr. Sumpter seeks to appeal from the partial denial. We **reverse** the district court's grant of habeas relief, concluding—under the deference prescribed in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")—that the Kansas Court of Appeals ("KCOA") was reasonable in determining that any ineffective assistance of counsel was not prejudicial because the evidence was sufficient to support the aggravated kidnapping conviction. Furthermore, even assuming, *arguendo*, that the KCOA's

decision was not entitled to AEDPA deference, we conclude—under de novo review—that the KCOA's decision should be upheld.  As such, we **remand the case** with instructions to enter judgment for the State of Kansas.  Additionally, having concluded that Mr. Sumpter is required to obtain a COA for the claims comprising his cross-appeal, we **deny** Mr. Sumpter a COA; accordingly, we **dismiss** his cross-appeal for lack of jurisdiction.

## I

We limit our recitation of the facts to those found by the KCOA.  *See Sumpter v. State* (*Sumpter I*), No. 117,732, 2019 WL 257974, at *3 (Kan. Ct. App. Jan. 18, 2019) (unpublished); *see also Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) ("[I]n reviewing a state court decision under § 2254(d)(1), we must 'limit[ ]' our inquiry 'to the record that was before the state court that adjudicated the claim on the merits.'" (second alteration in original) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011))); *Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015) ("[S]tate-court findings of fact are entitled to great deference . . . . 'The presumption of correctness also applies to factual findings made by a state court of review based on the trial record.'" (quoting *Morgan v. Hardy*, 662 F.3d 790, 797–98 (7th Cir. 2011))).

Around 1:00 a.m. on January 11, 2011, Mr. Sumpter accosted J.B., a young woman, as she walked to her car in the Old Town entertainment district in Wichita, Kansas.  When they arrived at J.B.'s car, Mr. Sumpter forced his way in, grabbed J.B., and attempted to sexually assault her.  Mr. Sumpter had his knee across J.B.'s throat as he tried to touch her vagina.  She briefly lost consciousness.  When she

regained consciousness, Mr. Sumpter was masturbating and forced J.B. to touch his penis.

During the attack, Mr. Sumpter took J.B.'s car keys from her as she attempted to fight him off and threw them out the window. Part way through the attack, J.B. was able to force Mr. Sumpter out of the car and lock the doors. Mr. Sumpter then retrieved the keys and displayed them to J.B. in an effort to get her to open the door. J.B. relented, and Mr. Sumpter forced his way back into the car and resumed his assault.

Eventually, another car pulled up and Mr. Sumpter went to speak with the driver. In the meantime, J.B. found her keys and drove away.

The State charged Mr. Sumpter with aggravated kidnapping, attempted rape, and aggravated sexual battery. When Mr. Sumpter was charged, Kansas law defined kidnapping as "the taking or *confining* of any person, accomplished *by force*, threat or deception, with the intent to hold such person . . . *to facilitate* . . . the commission of any crime." K.S.A. § 21-3420 (repealed 2011) (emphases added). Aggravated kidnapping "is kidnapping . . . when bodily harm is inflicted upon the person kidnapped." K.S.A. § 21-3421 (repealed 2011).

In *State v. Buggs*, the Kansas Supreme Court construed the "facilitate" element as the "key word" to avoid "convert[ing] every robbery and every rape into the more serious offense of kidnapping." 547 P.2d 720, 726, 730–31 (Kan. 1976). The *Buggs* framework requires the State to show confinement by force that: (1) "Must not be slight, inconsequential and merely incidental to the other crime"; (2) "Must not be of

4

the kind inherent in the nature of the other crime"; and (3) "Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." *Id.* at 731.

In March 2012, the Sedgwick County District Court conducted a consolidated jury trial.[1]  Mr. Sumpter's trial counsel did not offer any testimony about Mr. Sumpter's withholding of the keys as a means of confining J.B. in her vehicle.  Nor did counsel cross-examine J.B. about that issue.  Trial counsel did move, however, for a judgment of acquittal at the end of the State's case.  Yet counsel did not mention the *Buggs* standard or any specific evidentiary deficiency related to the facilitation element of the aggravated kidnapping charge.

The jury found Mr. Sumpter guilty of all counts.  Although trial counsel moved for a judgment of acquittal after the verdict, counsel again did not base the motion on the *Buggs* standard.  For the aggravated kidnapping charge, the state district court sentenced Mr. Sumpter to 186 months of imprisonment.  In total, the court sentenced Mr. Sumpter to 351 months of imprisonment.  On direct appeal, appellate counsel for Mr. Sumpter did not challenge the sufficiency of the evidence as to the aggravated kidnapping conviction.  The Kansas Court of Appeals affirmed

---

[1]    Over the course of seven months, Mr. Sumpter sexually assaulted three other women in Sedgwick County, in addition to J.B.  Given the similar nature of these attacks, the state district court consolidated the cases relating to these assaults for a single trial.

Mr. Sumpter's convictions and sentence, and the Kansas Supreme Court denied review. *See State v. Sumpter*, 313 P.3d 105, 2013 WL 6164520 (Kan. Ct. App. Nov. 22, 2013) (unpublished).

Mr. Sumpter filed a petition for a Writ of Habeas Corpus in state court pursuant to K.S.A. § 60-1507. Mr. Sumpter argued that his "Trial Counsel Provided Ineffective Assistance by Failing to Challenge the Insufficiency of the State's Aggravated Kidnapping Charges." Jt. App., Vol. III, at 349 (Am. Pet. for Writ of Habeas Corpus & *In Forma Pauperis* Aff., filed July 21, 2016). Additionally, Mr. Sumpter claimed that his constitutional rights were violated because of "Ineffective Assistance of Appellate Counsel in . . . Failing to Argue the Sufficiency of the Kidnapping Charges related to J.B." *Id.* at 357. Specifically, Mr. Sumpter argued that his trial and appellate counsel were ineffective because they did not argue that his confinement of J.B. in her car was "inherent in committing the underlying attempted rape" and had no significance independent of the attempted rape itself. *Id.* at 352.

The Sedgwick County District Court denied Mr. Sumpter's claims. The court reasoned that, as a matter of law, "[c]onfining a victim in a car; physically restraining her from leaving that car; and physically prohibiting her from yelling for help is not inherent in the nature of rape or attempted rape." *Id.* at 464 (Mem. Order Den. Pet. for Writ of Habeas Corpus, filed May 2, 2017). Therefore, the court concluded that "[t]he outcome of the trial would not have changed, even if trial counsel would have raised the issue at any time before or during the trial. Because the prejudice prong is

6

not met, there is no reason for this [state trial] court to consider the reasonableness prong of the [*Strickland*] test." *Id.* at 465.

Mr. Sumpter appealed to the KCOA.  He argued, among other things, that his "trial counsel was ineffective because [counsel] did not understand the elements of the aggravated kidnapping count and, as a result, failed to challenge the sufficiency of the State's evidence at every phase." Jt. App., Vol. IV, at 563 (Petitioner-Appellant Timothy Sumpter's Br. to the KCOA, filed Aug. 25, 2017).  Furthermore, Mr. Sumpter claimed that his "appellate counsel provided ineffective assistance by failing to raise sufficiency of the evidence on the aggravated kidnapping count." *Id.* at 579.

In January 2019, the KCOA issued an opinion denying each of Mr. Sumpter's claims.  *Sumpter I*, 2019 WL 257974.  At the outset of its opinion, the KCOA plainly stated its holding:

> We find [Mr.] Sumpter has failed to show a constitutional injury depriving him of a fundamentally fair adjudication of the charges against him, *meaning he has not persuaded us that absent the errors he alleges there is a reasonable probability the outcome would have been different*.

*Id*. at *1 (emphasis added).

The KCOA then laid out the *Strickland* standard:

> To prevail . . ., a convicted defendant must show both that his or her legal representation fell below the objective standard of reasonable competence guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there probably would have been a different outcome in the criminal case. *Strickland v. Washington*, 466 U.S. 668,

7

> 687–88, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) . . . .
> A *reasonable probability of a different outcome*
> "undermine[s] confidence" in the result and marks the
> criminal proceeding as fundamentally unfair. *See*
> *Strickland*, 466 U.S. at 694. The movant, then, must prove
> both constitutionally inadequate representation and
> sufficient prejudice attributable to that representation to
> materially question the resulting convictions.

*Id.* (alteration in original) (emphasis added). With this standard in mind, the KCOA

evaluated and ultimately rejected Mr. Sumpter's *Strickland* claim that his trial

counsel was ineffective for failing to challenge the sufficiency of the evidence of the

aggravated kidnapping conviction:

> For the aggravated kidnapping charge, the State had to
> prove [Mr.] Sumpter "confin[ed]" J.B. by force "to
> facilitate" his intent to rape her and she suffered bodily harm
> as a result . . . .
>
> . . . .
>
> Here, [Mr.] Sumpter confined J.B. in the midst of the
> criminal episode when she forced him out of her car and he
> retrieved her keys that he had earlier thrown out the window.
> At that point, J.B. was unable to leave. If she tried to get
> out of the car, [Mr.] Sumpter could easily seize her. And
> she couldn't drive the car away, thereby escaping, without
> the keys. [Mr.] Sumpter had, thus, effectively trapped J.B.
> in the enclosed space of the vehicle—a circumstance he
> highlighted by displaying the keys to her. [Mr.] Sumpter
> then used the keys as part of a ploy to get J.B. to unlock the
> car to get them back. When she did, he forced his way in
> and resumed his assault of her. The confinement was clear,
> deliberate, and more than instantaneous. To support a
> kidnapping or aggravated kidnapping conviction, the
> confinement need not be extended. No particular amount of
> time is required; the fact of confinement is sufficient.
> *Buggs*, 219 Kan. at 214; *State v. Ellie*, No. 110,454, 2015
> WL 2342137, at *6 (Kan. App. 2015) (unpublished
> opinion).

The standoff between [Mr.] Sumpter and J.B. and, thus, the confinement cannot be characterized as simply incidental to or inherent in the sexual assault. [Mr.] Sumpter held J.B. hostage in a specific place and sought to gain access to that place to commit a crime against her. But that situation could have been the prelude to all sorts of crimes and was not unique to rape or even sex offenses. Having gotten into the car, [Mr.] Sumpter could have robbed or severely beaten J.B. The point is [Mr.] Sumpter trapped J.B. in a small, closed place of limited safety and induced J.B. to compromise that safety in an effort to escape. Her effort permitted [Mr.] Sumpter entry to the car making the commission of the crime that followed "substantially easier" than if he had to physically break in to the car. The circumstances fit within the *Buggs* test for a confinement sufficiently distinct from the underlying crime to be successfully prosecuted as an aggravated kidnapping given J.B.'s undisputed injuries . . . .

*Because the trial evidence was sufficient for the jury's verdict,* [*Mr.*] *Sumpter could have suffered no prejudice from his lawyers' handling of the charge and conviction either in the district court leading up to and during the trial or on direct appeal in this court.* He has failed to show a basis for relief under K.S.A. 60-1507.

*Id.* at *3–5 (second alteration in original) (emphasis added). The KCOA then

dismissed the remainder of Mr. Sumpter's claims. *Id.* at *5–15. Mr. Sumpter appealed

to the Kansas Supreme Court. However, the Kansas Supreme Court denied Mr.

Sumpter's request for review.

After exhausting his state options, Mr. Sumpter requested federal habeas relief,

pursuant to 28 U.S.C. § 2254, in the United States District Court for the District of

Kansas. On September 10, 2020, the district court entered a memorandum and order

vacating Mr. Sumpter's aggravated kidnapping conviction but denying Mr. Sumpter's

9

remaining claims. *See Sumpter v. Kansas* (*Sumpter II*), 485 F. Supp. 3d 1286 (D. Kan. 2020). In reaching its conclusion, the district court did not apply AEDPA deference to the KCOA's decision. Specifically, the court stated:

> The KCOA concluded that [Mr. Sumpter] confined J.B. after he had been kicked out of the car by retrieving her keys and thus trapping her in the car (she could not drive away, and he could seize her if she attempted to get out). *See Sumpter* [*I*], 2019 WL 257974, at *4. The KCOA further concluded that such confinement was independent of the attempted rape for purposes of *Buggs*. *See id.* at *5. The KCOA reached that conclusion in deciding that the evidence was sufficient to support a kidnapping conviction and that [Mr. Sumpter] therefore could not establish the necessary prejudice under *Strickland*. *See id.* at *3. The KCOA applied the wrong standard, however – the issue is not whether the evidence was legally sufficient; the issue is whether there is a reasonable probability of a different outcome. Thus, the state court's ruling deviated from the controlling federal standard and *was contrary to clearly established federal law*. *See Milton v. Miller*, 744 F.3d 660, 670 (10th Cir. 2014). The result is that this Court does not defer to the KCOA's resolution of this claim, and instead reviews the claim *de novo. See id.* at 671.

*Id.* at 1296 (emphasis added).

Exercising de novo review, the district court found that the "KCOA did not address . . . or explain how [Mr. Sumpter's] conduct outside the car constituted confinement by force." *Id.* As such, the court then conducted an extensive evaluation of Kansas kidnapping law, reasoning as follows:

> *Cabral* [i.e., *State v. Cabral*, 619 P.2d 1163 (Kan. 1980)] is the most apt precedent by which to consider the application of *Buggs* to [Mr. Sumpter's] conduct in J.B.'s car. [Mr. Sumpter's] conduct in restraining J.B. occurred while fighting with her in his attempt to commit sexual assault, and the Kansas Supreme Court made clear in *Cabral* that

10

such conduct is merely incidental to the assault. The state trial court cited [Mr. Sumpter's] conduct in grabbing J.B.'s hand when she reached for the door handle; but as the supreme court recognized, a perpetrator must confine the victim somewhat – and obviously prevent her from leaving – to commit the crime of rape. [Mr. Sumpter] did not take J.B. to another location to avoid detection or otherwise to facilitate the rape; in the parlance of the *Cabral* court, he simply proceeded to assault J.B. once he was alone with her in the car.

Some Kansas courts, in distinguishing *Cabral*, have noted that the victim in *Cabral* had consensually ridden around with the defendant for a period of time preceding the assault. Indeed, J.B. did not voluntarily spend the evening with [Mr. Sumpter] prior to the assault in this case. The point of the *Cabral* court in citing that fact, however, was that the defendant had not taken or confined the victim until immediately prior to and as part of the assault. Moreover, in each of those other cases in which *Cabral* was distinguished, there was some conduct by the defendant that took the case beyond the "ordinary" rape in a single confined place in a relatively short time frame – for instance, the defendant had taken the victim or used restraints or moved the victim to a different place to facilitate the assault. *See, e.g.*, *State v. Halloway*, 256 Kan. 449, 452–53, 886 P.2d 831 (1994) (defendant did not rape the victim in the car, but dragged her into woods away from the highway to lessen the risk of detection); *State v. Blackburn*, 251 Kan. 787, 794, 840 P.2d 497 (1992) (defendant lessened the risk of detection by driving the victim to other locations); *State v. Zamora*, 247 Kan. 684, 696, 803 P.2d 568 (1990) (conduct went beyond that of *Cabral*; defendant's tying and gagging the victim and his lying in front of the door to the residence to prevent escape was not merely incidental to and inherent in an "ordinary" rape); *State v. Howard*, 243 Kan. 699, 702, 763 P.2d 607 (1988) (defendant restrained the victim in a house for hours and refused to let her leave when she tried to flee after the assault); *State v. Coberly*, 233 Kan. 100, 105, 661 P.2d 383 (1983) (victim rode with the defendant for a prolonged period because of deception); *State v. Montes*, 28 Kan. App. 2d 768, 772, 21 P.3d 592 (2001) (defendant drove the victim

11

to another location to facilitate the assault), *rev. denied* (Kan. June 12, 2001, and July 11, 2001).

Again, in the present case, the alleged confinement took place within the car, at a single location, during the attempted assault. The State has not addressed the conduct inside the car, and thus the State has not cited any Kansas case in which such conduct solely within a vehicle has been found sufficient to support a kidnapping conviction. *Cabral* is thus the most apt case here.

*Id.* at 1297–98.

The district court then conducted an independent factual investigation and

determined that Mr. Sumpter's conduct did not constitute confinement by force:

One might argue (although the State made no such argument here) that [Mr. Sumpter] confined J.B. when he forcibly took her car keys while in the car, thereby hindering her ability to flee. Such conduct would not necessarily be required as part of the assault. *The testimony at trial, however, does not support such a theory of confinement.* J.B. testified that [Mr. Sumpter] made reference to the attached mace and took the keys to prevent J.B. from using that mace. She also testified that she did not know how the keys ended up outside the car. [Mr. Sumpter] testified that he ripped the mace off the keys and discarded it, and that he grabbed the keys away so that J.B. could no longer hit him with the keys in her hand. He further testified that he did not know whether he threw the keys out of the car. Thus, there was no certain evidence (only [Mr. Sumpter]'s speculation that he might have done so) that [Mr. Sumpter] threw the keys out of the car (as opposed to finding the keys outside where they fell when [Mr. Sumpter] was kicked out), and there was no evidence at all that he took the keys to prevent J.B. from driving away. Thus, a reasonable jury that followed the testimony would not likely find that [Mr. Sumpter] confined J.B. by taking her keys and throwing them outside the car.

*Id.* at 1298–99 (emphasis added).

Based on its interpretation of Kansas law and its factual findings, the district court ultimately found in favor of Mr. Sumpter, holding:

> The Court thus concludes, based on the Kansas precedent, that if confronted with the issue the Kansas Supreme Court would rule that [Mr. Sumpter's] conduct inside the car (after he forced his way inside) did not constitute a separate crime of kidnapping under the *Buggs* standard. As discussed above, [Mr. Sumpter] also had a strong defense based on his conduct outside the car.
>
> Accordingly, [Mr. Sumpter] could have raised a defense to the kidnaping charge as submitted to the jury (confinement only, by force only) with a great likelihood of success based on the kidnapping statute as interpreted in *Buggs* and *Cabral*. Based on the strength of that defense, there is little doubt that counsel's failure to raise that defense, based on settled caselaw, before or during or after trial, was objectively unreasonable.
>
> . . . . The strength of this defense under Kansas law creates a probability of a different outcome sufficient to undermine confidence in the kidnapping conviction. [Mr. Sumpter] is therefore entitled to relief.

*Id.* at 1299.

The district court then summarily denied Mr. Sumpter's remaining claims. *See id.* at 1300–07. Furthermore, the court denied Mr. Sumpter's request for a certificate of appealability with respect to his remaining claims, including:

1. Mr. Sumpter was denied his rights under the Sixth Amendment because the jury venire did not include any African Americans;

2. Appellate counsel's performance was constitutionally deficient in failing to argue instances of prosecutorial misconduct; and

3. Trial counsel's performance was constitutionally deficient in obtaining continuances of the trial date without Mr. Sumpter's consent, thereby forfeiting Mr. Sumpter's speedy trial rights.

*Id.* at 1308.

The State of Kansas now appeals from the district court's grant of habeas relief. First, the State argues that the KCOA reasonably applied *Strickland v. Washington*—in particular, that case's prejudice standard—thereby entitling the KCOA's decision to AEDPA deference. Under AEDPA deference, the State contends the KCOA's decision must be affirmed. The State further contends that, even under de novo review, the KCOA's decision should be affirmed. On cross-appeal, Mr. Sumpter seeks to appeal from the district court's partial denial of habeas relief. Specifically, Mr. Sumpter asserts that he may not need a certificate of appealability for his cross-appeal of his remaining claims. Alternatively, Mr. Sumpter requests that we grant a certificate of appealability as to his remaining claims.

**II**

"[H]abeas corpus is not intended as a substitute for appeal, nor as a device for reviewing the merits of guilt determinations at criminal trials. Instead, it is designed to guard against extreme malfunctions in the state criminal justice systems." *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring) (citation omitted). Accordingly, "[t]he [AEDPA] circumscribes our review of claims adjudicated on the merits in state court proceedings." *Littlejohn*, 704 F.3d at 824; *see also Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) ("Section 2254(d) [i.e., a central provision of AEDPA] reflects the view that habeas corpus is a 'guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." (quoting *Jackson*, 443 U.S. at 332 n.5)).

"Under AEDPA, a petitioner is entitled to federal habeas relief on a claim only if he can establish that the state court's adjudication of the claim on the merits (1) 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law'; or (2) 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Littlejohn*, 704 F.3d at 824 (quoting 28 U.S.C. § 2254(d)(1), (2)).  Under the AEDPA standard, "'state-court decisions [should] be given the benefit of the doubt' and '[r]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law.'" *Washington v. Roberts*, 846 F.3d 1283, 1293 (10th Cir. 2017) (alterations in original) (quoting *Holland v. Jackson*, 542 U.S. 649, 655 (2004) (per curiam)).

"Under § 2254(d)(1), the threshold question is whether there exists clearly established federal law." *Hooks v. Workman* (*Victor Hooks II*), 689 F.3d 1148, 1163 (10th Cir. 2012) (citing *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008)). "'Clearly established Federal law' refers to the Supreme Court's holdings, not its dicta." *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

If there exists clearly established federal law, a state-court decision is "contrary to" it "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme

15

Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (alteration in original) (quoting *Williams*, 529 U.S. at 413). "Critically, an '*unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Wood*, 907 F.3d at 1289 (quoting *Williams*, 529 U.S. at 410). "[E]ven a clearly erroneous application of federal law is not objectively unreasonable." *Id.* (alteration in original) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Rather, a state court's application of federal law is only unreasonable if '*all* fairminded jurists would agree the state court decision was incorrect.'" *Id.* (emphasis added) (quoting *Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014)).

"We review the district court's legal analysis of the state court decision de novo." *Welch v. Workman*, 639 F.3d 980, 991 (10th Cir. 2011) (quoting *Bland*, 459 F.3d at 1009). "Furthermore, in reviewing a state court decision under § 2254(d)(1), we must 'limit[ ]' our inquiry 'to the record that was before the state court that adjudicated the claim on the merits.'" *Littlejohn*, 704 F.3d at 825 (alteration in original) (quoting *Pinholster*, 563 U.S. at 181). "Factual findings of the state court are presumed correct unless the applicant rebuts that presumption by 'clear and convincing evidence.'" *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

16

Finally, § 2254 limits habeas relief to "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, "federal habeas corpus relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (alteration omitted) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *accord Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021). As such, "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

### III

The State of Kansas raises two issues on appeal. First, it argues that the KCOA's decision was not contrary to, nor an unreasonable application of the Supreme Court's decision in *Strickland v. Washington*. As such, the State contends the KCOA's decision is due AEDPA deference and must be affirmed. Second, the State claims that even under de novo review, the KCOA's decision should be affirmed. It contends in this regard that the district court erred by failing to apply the statutory presumption of correctness to the KCOA's factual findings and substituting its own interpretation of state law for that of the KCOA. Generally speaking, we agree with the State; consequently, the district court's grant of habeas relief cannot stand.

More specifically, we agree with the State that the KCOA's decision was neither contrary to, nor an unreasonable application of, clearly established federal

17

law. And, when AEDPA deference is appropriately applied to the KCOA's decision, we conclude that the KCOA was reasonable in determining that any ineffective assistance of counsel was not prejudicial because the evidence was sufficient to support the aggravated kidnapping conviction. Moreover, even assuming, *arguendo*, that the KCOA's decision was not entitled to AEDPA deference, we conclude that the KCOA's decision should be upheld under de novo review. Quite apart from AEDPA—the KCOA's factual findings and interpretation of state law were entitled to deference in the habeas context, and the district court wrongly denied that deference.

**A**

In this appeal, the clearly established federal law comes from *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner "must show both that his counsel's performance 'fell below an objective standard of reasonableness' and that 'the deficient performance prejudiced the defense.'" *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (emphasis omitted) (quoting *Strickland*, 466 U.S. at 687–88). "These two prongs may be addressed in any order, and failure to satisfy either is 'dispositive.'" *Littlejohn*, 704 F.3d at 859 (quoting *Byrd*, 645 F.3d at 1168). "[R]easonableness" is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. Prejudice "requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Specifically, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Williams*, 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694).

"The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors."  *Strickland*, 466 U.S. at 695.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.*

**1**

The State first contends that the overall substance of the KCOA's analysis reflects that it understood and decided Mr. Sumpter's ineffective assistance claim under the proper *Strickland* framework.  *See* Aplt.'s Opening Br. at 35.  Thus, the State concludes that the KCOA's decision was not "contrary to" clearly established federal law and that the district court erred in ruling to the contrary.  Mr. Sumpter responds that the KCOA "announced and applied a sufficiency standard that was contrary to federal law."  Aplee.'s Resp. Br. at 29.  Specifically, Mr. Sumpter argues that the KCOA misstated the *Strickland* prejudice standard as a sufficiency of the evidence standard.  *Id.*  Consistent with Mr. Sumpter's argument, the district court found that "[t]he KCOA applied the wrong standard[:] . . . the issue is not whether the evidence was legally sufficient; the issue is whether there is a reasonable probability of a different outcome."  *Sumpter II*, 485 F. Supp. 3d at 1296.  Therefore, the district court concluded "the state court's ruling deviated from the controlling

federal standard and was contrary to clearly established federal law." *Id.* We conclude that the State has the better of this argument—specifically, that the district court erred in concluding that the KCOA's decision was contrary to clearly established federal law of the U.S. Supreme Court, that is, *Strickland*.

"A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," but "a run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 405–06. More specifically, as the Supreme Court has stated, "a state-court decision on a prisoner's ineffective-assistance claim [that] correctly identifies *Strickland* as the controlling legal authority and [ ] appl[ies] that framework . . . . would be in accord with [the Supreme Court's] decision in *Strickland*[,] . . . even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself." *Id.* at 406. Therefore, when determining whether a state court's decision was "contrary to" clearly established law, we simply determine whether the state court correctly identified *Strickland* as the controlling legal authority and applied that framework.

Here, the KCOA clearly identified *Strickland* as the controlling authority and applied that framework—specifically, *Strickland*'s prejudice standard. At the very outset of the opinion, in providing an overview of its holding, the KCOA plainly invoked the substance of the *Strickland* prejudice standard:

20

> We find [Mr.] Sumpter has failed to show a constitutional injury depriving him of a fundamentally fair adjudication of the charges against him, *meaning he has not persuaded us that absent the errors he alleges there is a reasonable probability the outcome would have been different.*

*Sumpter I*, 2019 WL 257974, at *1 (emphasis added).  Shortly thereafter, the KCOA correctly identified and detailed the *Strickland* standard:

> To prevail . . ., a convicted defendant must show both that his or her legal representation fell below the objective standard of reasonable competence guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there probably would have been a different outcome in the criminal case. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014); *see Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance).  A reasonable probability of a different outcome "undermine[s] confidence" in the result and marks the criminal proceeding as fundamentally unfair. *See Strickland*, 466 U.S. at 694.  The movant, then, must prove both constitutionally inadequate representation and sufficient prejudice attributable to that representation to materially question the resulting convictions.

*Id.* (alteration in original).

The KCOA then correctly stated the petitioner's burden: "Regardless of the inadequacy of legal representation, a [habeas] motion fails if the movant cannot establish substantial prejudice."  *Id.* at *2; *see Pinholster*, 563 U.S. at 189 ("A reasonable probability . . . . requires a 'substantial,' not just 'conceivable,' likelihood of a different result." (quoting *Richter*, 562 U.S. at 112)).  The KCOA also correctly determined that it "properly may deny a motion that falters on the prejudice

21

component of the *Strickland* test without assessing the sufficiency of the representation," which is exactly what it did here. *Sumpter I*, 2019 WL 257974, at *2 (citing *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")). Therefore, in deciding Mr. Sumpter's ineffective assistance claim, the KCOA correctly stated, and demonstrated a clear understanding of, the *Strickland* standard. And, contrary to the district court's conclusion here, the KCOA applied the *Strickland* prejudice standard—instead of abandoning it for a sufficiency of the evidence test.

In this regard, "the KCOA's proper articulation of the prejudice standard in other parts of its opinion confirms that it was not relying on an impermissible [sufficiency of the evidence] standard." *Frost*, 749 F.3d at 1227. As noted, the KCOA correctly stated the *Strickland* standard at the outset of its opinion—including the standard's test for prejudice. *Sumpter I*, 2019 WL 257974, at *1. Later in the opinion, when considering Mr. Sumpter's ineffective assistance claim regarding his attorneys' handling of the trial court's consolidation of his several criminal cases, the KCOA further demonstrated an awareness of how *Strickland*'s prejudice standard worked:

> The question posed here, however, is whether [Mr.] Sumpter *reasonably could have expected a different outcome* had the district court denied the State's request to consolidate and ordered a separate trial for each incident. If so, then, [Mr.] Sumpter has demonstrated the sort of prejudice required under *Strickland*.

22

*Id.* at \*8 (emphasis added). The KCOA ultimately concluded that "[Mr.] Sumpter cannot point to actual legal prejudice *consistent with the Strickland test* flowing from the consolidated trial as compared to separate trials." *Id.* at \*10 (emphasis added).

Taken together, "the overall substance of the [KCOA's] analysis, as well as the result it reached, reflects that the court understood and decided the ineffective-assistance issue under the proper *Strickland* framework." *Grant v. Royal*, 886 F.3d 874, 906 (10th Cir. 2018). Therefore, we agree with the State that the KCOA's decision was not "contrary to" clearly established federal law, and the district court erred in concluding otherwise.

Further, as we discuss below, we are unable to uphold the district court's determination that AEDPA deference was inappropriate on the ground that the KCOA's decision reflected an unreasonable application of *Strickland*. We conclude that—contrary to the district court's concern—the KCOA did not act unreasonably in considering, as part of its ineffective assistance analysis, whether there was sufficient evidence of the aggravated kidnapping offense.

**2**

The State argues that the KCOA reasonably applied clearly established federal law by determining that Mr. Sumpter was not prejudiced within the meaning of *Strickland* by his counsel's failures to challenge the sufficiency of the evidence supporting his aggravated kidnapping conviction because such a challenge would have been meritless—*viz.*, the evidence was sufficient to support his aggravated kidnapping conviction. Specifically, the State contends that the KCOA analyzed the

23

sufficiency of the evidence in order to answer the prejudice question that *Strickland* defines—that is, whether there was a reasonable probability of a different outcome had Mr. Sumpter's counsel raised such a sufficiency challenge. *See* Aplt.'s Opening Br. at 23.

Mr. Sumpter responds that the KCOA's decision evinced an unreasonable application of clearly established law, as its conclusion on prejudice was "explicitly linked to a sufficiency determination." Aplee.'s Resp. Br. at 29. Mr. Sumpter claims that the KCOA's use of a sufficiency analysis ignored "the Supreme Court's exhortation that the 'reasonable probability' determination requires the court to weigh all of the evidence before the jury and assess whether the verdict is only 'weakly supported' by the evidence." *Id.* at 28. Yet, as Mr. Sumpter reasons, "Kansas courts have made clear that in a sufficiency determination, appellate courts only view the evidence in the light most favorable to the State and 'do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *Id.* (quoting *State v. Brown*, 387 P.3d 835, 848 (Kan. 2017)). Thus, Mr. Sumpter contends that evaluating *Strickland* prejudice through the application of the sufficiency of the evidence standard has the effect of forcing petitioners to satisfy a heightened, outcome-determinative test, which is inconsistent with *Strickland*'s "reasonability probability" standard. Accordingly, Mr. Sumpter argues that the KCOA's approach is "not merely wrong, but 'objectively unreasonable' under

24

AEDPA." *Id.* (quoting *Crace v. Herzog*, 798 F.3d 840, 849 (9th Cir. 2015)). We disagree.

In assessing the State's claim, we must be cognizant of our standard of review. Under § 2254(d)(1), a federal court must limit its review to determining "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. In other words, it bears keeping in mind that "[f]or purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410); *accord Frost*, 749 F.3d at 1223. Under this deferential standard, the KCOA's determination that Mr. Sumpter's *Strickland* claim lacks merit has the effect of "preclud[ing] federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

We conclude the KCOA reasonably applied *Strickland*. In his Opening Brief to the KCOA, Mr. Sumpter argued his trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence to support his aggravated kidnapping conviction.[2] *See* Jt. App., Vol. IV, at 563, 579. Accordingly, the KCOA

---

[2]    On appeal, Mr. Sumpter argues that the KCOA mischaracterized his *Strickland* claim as solely stemming from his trial counsel's failure to challenge the sufficiency of the evidence to support his aggravated kidnapping conviction. *See* Aplee.'s Resp. Br. at 21. Instead, he claims that he has consistently argued that his trial counsel was ineffective for failing to "investigate, understand, develop, and deploy a *Buggs*-defense to his aggravated kidnapping claim" at various stages of the case. *Id.* However, in his Opening Brief submitted to the Kansas Court of Appeals, Mr. Sumpter clearly framed the issue in a way that centered on counsel's failure to

raise the sufficiency of the evidence issue.  He stated the following: "[Mr.] Sumpter's trial counsel was ineffective because she did not understand the elements of the aggravated kidnapping count and, *as a result, failed to challenge the sufficiency of the State's evidence* at every phase."  Jt. App., Vol. IV, at 563 (emphasis added).  Though this language complains of counsel's lack of understanding of the law of aggravated kidnapping, it pinpoints counsel's failure to actually lodge a challenge to the sufficiency of the evidence as the *action* resulting in allegedly ineffective assistance.  Similarly, in his petition for a Writ of Habeas Corpus to the Sedgwick County District Court, Mr. Sumpter argued that his "Trial Counsel Provided Ineffective Assistance by *Failing to Challenge the Insufficiency of the State's Aggravated Kidnapping Charges*."  Jt. App., Vol. III, at 349 (emphasis added).  Therefore, neither his state petition for Writ of Habeas Corpus nor his argument as presented to the KCOA supports his more expansive framing here of his ineffective assistance grievances with his aggravated kidnapping conviction.  Furthermore, the district court did not find that the KCOA erred in characterizing Mr. Sumpter's *Strickland* claim as centered on the failure to challenge the sufficiency of the evidence.  Instead, the district court, like the KCOA, confined its analysis to determining whether Mr. Sumpter's trial counsel was ineffective for failing to challenge the sufficiency of the evidence for Mr. Sumpter's aggravated kidnapping conviction.  In sum, we cannot conclude that, as to his aggravated kidnapping conviction, Mr. Sumpter fairly presented any non-sufficiency ineffective assistance claims before the state courts; that is, he failed to exhaust any such claims.

Furthermore, even if Mr. Sumpter had appropriately framed his *Strickland* argument to include multiple, non-sufficiency claims of ineffective assistance, and properly exhausted such discrete claims in the state court, he would still face an ultimately insurmountable obstacle to having those claims heard now on appeal: specifically, he would need a COA for each of those discrete claims, and he has not asked for one in his Opening Brief, much less made a meaningful showing that these claims satisfy the COA standard of § 2253(c)(2).  *See Milton v. Miller*, 812 F.3d 1252, 1264 (10th Cir. 2016) ("[Petitioner] cannot allege an ineffective-assistance claim and then usher in anything fitting under that broad category as the same claim.  Counsel can perform ineffectively in [a] myriad [of] ways."); *Glossip v. Trammell*, 530 F. App'x 708, 732 n.7 (10th Cir. 2013) (unpublished) ("Because [petitioner] failed to timely move for an expanded COA [to raise additional, "discrete claims of ineffective assistance"] and failed to offer any reason this court could conclude these additional claims satisfy the statutory standard set out in 28 U.S.C. § 2253(c)(2), [petitioner's] request [in his appellate briefing] for an expanded COA is **denied.**"); *see also United States v. Ramsey*, 830 F. App'x 584, 586 (10th Cir. 2020) (unpublished) ("[Petitioner's] initial § 2255 motion raised twenty-two claims of ineffective assistance of counsel . . . .  Yet, he never raised the precise two claims presented [on appeal].  In light of our 'general rule against considering issues for the

quite reasonably analyzed whether Mr. Sumpter suffered prejudice under *Strickland* from counsel's failure to raise such a challenge by inquiring as to whether such a sufficiency challenge would have been meritorious. Stated otherwise, the KCOA reasonably analyzed the question of prejudice under *Strickland* by assessing whether, but for counsel's failure to challenge the sufficiency of the evidence, there is a reasonable probability that the result of the proceeding would have been different. That is, if the sufficiency of evidence challenge was determined to lack merit, as the KCOA ultimately posited here, it could not be said that there is a reasonable probability that the result would have been different if Mr. Sumpter's counsel advanced such a challenge.

The KCOA's approach is consistent with our own understanding of what the *Strickland* prejudice analysis entails. Specifically, we have recognized that "[w]hen, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006); *see Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000) ("When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue." (quoting *Hooks v. Ward* (*Victor Hooks I*), 184 F.3d 1206, 1221 (10th Cir. 1999))). "If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not

---

first time on appeal,' even in the habeas context, we will not consider these two new claims now . . . ." (quoting *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012))).

27

ineffective assistance." *Orange*, 447 F.3d at 797; *see Jones*, 206 F.3d at 959 ("If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." (quoting *Victor Hooks I*, 184 F.3d at 1221)).

Indeed, in the context of *Strickland* and under analogous circumstances, we have assessed the merits of a sufficiency of the evidence challenge in determining whether the state court acted unreasonably in determining that the petitioner was not entitled to relief based on his counsel's failure to present a sufficiency challenge. *See Upchurch v. Bruce*, 333 F.3d 1158, 1165 (10th Cir. 2003). In *Upchurch*, we considered whether petitioner's appellate counsel was constitutionally deficient for failing to challenge the sufficiency of the evidence for petitioner's kidnapping conviction. *See id.* at 1164. In evaluating petitioner's *Strickland* claim, we stated that "[i]n order to evaluate [petitioner's] counsel's performance under *Strickland*, 'we look to the merits of the omitted issue.'" *Id.* at 1164–65 (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)). Thus, as with the KCOA here, we evaluated the merits of the sufficiency of the evidence claim under Kansas's law of kidnapping to determine whether there was "insufficient evidence for a rational jury to convict [petitioner]." *Id.* at 1164–66.[3]

---

[3]    Although *Upchurch* concerned the performance prong of the *Strickland* test, the standard for evaluating counsel's "failure to raise a claim" is the same under either prong. *Compare Orange*, 447 F.3d at 797 ("When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue. If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." (citation omitted)),

Following this approach, under "AEDPA's deferential standard of review, we [held] that it was not unreasonable for the KCOA to conclude that [petitioner] received effective assistance of appellate counsel." *Id.* at 1167.  In other words, we looked to the merits of the sufficiency of the evidence challenge in determining whether the KCOA was unreasonable in concluding that counsel acted reasonably in omitting it.  *See id.*  The KCOA precisely followed this mode of analysis here as it related to the question of prejudice under *Strickland*.  And *Upchurch* strongly suggests that the KCOA acted reasonably in doing so.

More specifically, in assessing the merits of the sufficiency of the evidence claim here, the KCOA looked to the Kansas standard for assessing sufficiency of the evidence.[4]  *See Sumpter I*, 2019 WL 257974, at *3 ("To assess sufficiency we review

---

*with Upchurch*, 333 F.3d at 1163 ("In order to evaluate [petitioner's] counsel's performance, 'we look to the merits of the omitted issue.'" (quoting *Cargle*, 317 F.3d at 1202)).  Therefore, we believe our approach in *Upchurch* is—to say the least—instructive here.

[4]     The Kansas sufficiency of the evidence standard substantially mirrors the federal one.  *Compare Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis omitted)), *with State v. Butler*, 416 P.3d 116, 128 (Kan. 2018) ("[T]he standard of review is whether, after reviewing all the evidence in a light most favorable to the State, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.").  As discussed *supra*, we previously had occasion to apply the state standard in a habeas case—coincidentally the Kansas standard—in assessing the sufficiency of the evidence in the ineffective assistance context.  *See Upchurch*, 333 F.3d at 1165 ("In evaluating the sufficiency of the evidence in a criminal case, the Kansas courts determine 'whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder

the evidence in a light most favorable to the State as the prevailing party and ask whether reasonable jurors could return a guilty verdict based on that evidence." (citing *State v. Butler*, 416 P.3d 116, 128 (Kan. 2018))). The KCOA then extensively reviewed Kansas kidnapping law and the underlying facts of Mr. Sumpter's attack. *See id.* In particular, the KCOA found that Mr. Sumpter confined J.B. in the car when he "retrieved her keys that he had earlier thrown out the window" because she was unable to leave without them, rendering her "effectively trapped . . . in the enclosed space of the vehicle—a circumstance he highlighted by displaying the keys to her." *Id.* at *4. The court then applied these facts to Kansas kidnapping law and found that "[t]he circumstances fit within the *Buggs* test for a confinement sufficiently distinct from the underlying crime to be successfully prosecuted as an aggravated kidnapping given J.B.'s undisputed injuries." *Id.* at *5. Accordingly, the KCOA determined that Mr. Sumpter's sufficiency of the evidence claim was without merit.

With this conclusion in mind, the KCOA held that "[b]ecause the trial evidence was sufficient for the jury's verdict, [Mr.] Sumpter could have suffered no prejudice from his lawyers' handling of the charge and conviction." *Id.* In other words, because a challenge to the sufficiency of the evidence would have failed, there is no reasonable probability of a different outcome had Mr. Sumpter's counsel raised such a challenge. In our view, the KCOA's approach constituted an entirely

---

could have found the defendant guilty beyond a reasonable doubt.'" (quoting *State v. Jamison*, 7 P.3d 1204, 1211 (Kan. 2000))).

reasonable application of *Strickland*—in particular, its prejudice standard.  And nothing about the KCOA's application of *Strickland* gave the district court a proper basis to strip away AEDPA deference.

To be sure, at the conclusion of its *Strickland* analysis of Mr. Sumpter's claim based on counsel's failure to present a sufficiency of the evidence challenge, the KCOA did not explicitly restate that there was no "reasonable probability of a different outcome."  However, such "overemphasis on the language of a state court's rationale would lead to a grading papers approach that is outmoded in the post-AEDPA era."  *Roberts*, 846 F.3d at 1293 (alteration omitted) (quoting *Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1337 (11th Cir. 2013)).  We have "eschew[ed] the role of strict English teacher, finely dissecting every sentence of a state court's ruling to ensure all is in good order."  *Royal*, 886 F.3d at 905–06.  As such, we are unwilling to conclude that the KCOA's decision constituted an unreasonable application of the clearly established law of *Strickland* (or was contrary to that law) simply because it failed to parrot once again the well-established *Strickland* prejudice standard.

Moreover, we reject Mr. Sumpter's contention that the use of a sufficiency analysis might have resulted in the improper skewing of the KCOA's factual findings in favor of the State.  This contention is predicated on the truism that, under the sufficiency of the evidence standard, the facts are construed in the light most favorable to the State.  *See, e.g.*, *Butler*, 416 P.3d at 128; *Jackson*, 443 U.S. at 319.  Even putting aside that our precedent—construing *Strickland*'s commands—clearly

31

seems to support the KCOA's reliance on the sufficiency of the evidence standard, Mr. Sumpter can gain no ground from this contention based on the specific circumstances here.

Even if there were some possibility of such a skewing of the factfinding process—a question upon which we do not opine—Mr. Sumpter would be positioned poorly to claim prejudice from it because of his litigation decisions in this appeal. First, Mr. Sumpter has not meaningfully shown that the KCOA's factfinding was erroneous, much less demonstrated that it was erroneous by clear and convincing evidence as required under 28 U.S.C. § 2254(e)(1). Perhaps equally as important, Mr. Sumpter expressly conceded certain facts that were key, material pillars for the KCOA's sufficiency of the evidence analysis and its legal conclusion that any sufficiency of the evidence challenge would have lacked merit. Specifically, Mr. Sumpter conceded two key facts materially bearing on the KCOA's legal determination that Mr. Sumpter confined J.B. in the car in a manner supporting a kidnapping charge under *Buggs*: (1) "The keys ended up outside of the car" and (2) "Mr. Sumpter stood outside of the car with the keys." Oral Argument at 24:30–49. And that legal determination of confinement led the KCOA to conclude that Mr. Sumpter's counsel could not have mounted a meritorious challenge to the sufficiency of the evidence—*viz.*, that determination led the court to reach the ultimate conclusion that Mr. Sumpter could not establish prejudice under *Strickland*.

Accordingly, even if the KCOA's use of a sufficiency of the evidence approach had the effect—to some degree—of skewing the KCOA's factfinding, Mr.

32

Sumpter would be hard pressed here to claim that he was harmed by this effect. That is because Mr. Sumpter has not meaningfully challenged the KCOA's factual findings and, indeed, has expressly conceded the accuracy of key findings upon which the KCOA rested its legal confinement determination and, by logical extension, its prejudice determination under *Strickland*.

In sum, we conclude that the KCOA's decision reasonably applied *Strickland*—most notably, its prejudice standard—and its decision regarding Mr. Sumpter's ineffective assistance claim was entitled to AEDPA deference, which the district court here wrongly denied it. Under that deference, we discern no ground to disturb the KCOA's overarching conclusion that Mr. Sumpter did not carry his burden to establish ineffective assistance under *Strickland*. Put another way, the KCOA's determination that Mr. Sumpter's *Strickland* claim lacks merit has the effect of "preclud[ing] federal habeas relief[,] . . . as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664).

**B**

However, even assuming, *arguendo*, that the KCOA's decision was not entitled to AEDPA deference, we still would conclude under de novo review that the KCOA's decision should be upheld.

The State contends that the KCOA "correctly determined that under state law, the facts established [Mr.] Sumpter confined J.B." Aplt.'s Opening Br. at 38. As the State reasons, in overruling the KCOA's decision, the district court inappropriately

substituted its own factual determinations and interpretations of state law for that of

the KCOA.  Mr. Sumpter, on the other hand, claims that the district court did not err

in its treatment of state law.  Specifically, Mr. Sumpter contends that the State has

presented no cases "indicat[ing] that a federal district court cannot evaluate state law

in a *de novo* prejudice review to determine the strength of the defense at issue and its

likelihood of success."  Aplee.'s Resp. Br. at 41.  As such, Mr. Sumpter claims that

the district court "evaluated 'the strength of [the *Buggs*] defense under Kansas law'

and concluded that there was 'a significant likelihood that a jury, if properly

instructed on the law under *Buggs* and *Cabral*, would have found that [Mr. Sumpter]

did not confine (not merely take) J.B. by force.'"  *Id.*

We begin by noting that "[e]ven when reviewing a habeas claim de novo rather

than under § 2254(d), state-court factfinding still receives the benefit of doubt under

§ 2254(e)(1): that is, '[a]ny state-court findings of fact that bear upon the claim are

entitled to a presumption of correctness rebuttable only by clear and convincing

evidence.'"  *Fontenot v. Crow*, 4 F.4th 982, 1061 (10th Cir. 2021) (second alteration

in original) (quoting *Victor Hooks II*, 689 F.3d at 1164).  "The presumption of

correctness also applies to factual findings made by a state court of review based on

the trial record."  *Al-Yousif*, 779 F.3d at 1181 (quoting *Morgan*, 662 F.3d at 797–98).

Here, the KCOA made two key findings of fact, which it relied upon in

conducting its confinement analysis: (1) Mr. Sumpter "retrieved [J.B.'s] keys that he

had earlier thrown out the window," and (2) Mr. Sumpter "displayed the keys in an

effort to get J.B. to open the door."  *Sumpter I*, 2019 WL 257974, at *3–4.  Mr.

34

Sumpter has not meaningfully challenged these findings of fact—much less rebutted them by clear and convincing evidence as he would be obliged to do in challenging them pursuant to § 2254(e)(1).[5]  Therefore, we must presume the KCOA's factual findings are correct.[6]

Based on its factual findings, the KCOA made a legal determination that the requirements of kidnapping were satisfied under Kansas law.  Specifically, the KCOA concluded:

> For the aggravated kidnapping charge, the State had to prove [Mr.] Sumpter "confin[ed]" J.B. by force "to facilitate" his intent to rape her and she suffered bodily harm as a result . . . .
>
> . . . .
>
> Here, [Mr.] Sumpter confined J.B. in the midst of the criminal episode when she forced him out of her car and he retrieved her keys that he had earlier thrown out the window.  At that point, J.B. was unable to leave.  If she tried to get out of the car, [Mr.] Sumpter could easily seize her.  And she couldn't drive the car away, thereby escaping, without the keys.  [Mr.] Sumpter had, thus, effectively trapped J.B. in the enclosed space of the vehicle—a circumstance he

---

[5]    Indeed, as we noted *supra*, Mr. Sumpter has conceded two significant facts, which were critical to the KCOA's confinement analysis.  Specifically, Mr. Sumpter conceded that (1) "the keys ended up outside of the car," and (2) "Mr. Sumpter stood outside of the car with the keys."  Oral Argument at 24:30–49.

[6]    The district court found that "there was no certain evidence (only [Mr. Sumpter's] speculation that he might have done so) that [Mr. Sumpter] threw the keys out of the car."  *Sumpter II*, 485 F. Supp. 3d at 1299.  However, the district court inappropriately disregarded the KCOA's finding to the contrary: "During the attack, [Mr.] Sumpter took J.B.'s car keys from her as she attempted to fight him off and threw them out the window."  *Sumpter I*, 2019 WL 257974, at *3.  As required by § 2254(e)(1), we defer to the KCOA's findings of fact unless a petitioner rebuts those findings by clear and convincing evidence.

highlighted by displaying the keys to her. [Mr.] Sumpter then used the keys as part of a ploy to get J.B. to unlock the car to get them back. When she did, he forced his way in and resumed his assault of her. The confinement was clear, deliberate, and more than instantaneous. To support a kidnapping or aggravated kidnapping conviction, the confinement need not be extended. No particular amount of time is required; the fact of confinement is sufficient. *Buggs*, 219 Kan. at 214; *State v. Ellie*, No. 110,454, 2015 WL 2342137, at *6 (Kan. App. 2015) (unpublished opinion).

The standoff between [Mr.] Sumpter and J.B. and, thus, the confinement cannot be characterized as simply incidental to or inherent in the sexual assault. [Mr.] Sumpter held J.B. hostage in a specific place and sought to gain access to that place to commit a crime against her. But that situation could have been the prelude to all sorts of crimes and was not unique to rape or even sex offenses. Having gotten into the car, [Mr.] Sumpter could have robbed or severely beaten J.B. The point is [Mr.] Sumpter trapped J.B. in a small, closed place of limited safety and induced J.B. to compromise that safety in an effort to escape. Her effort permitted [Mr.] Sumpter entry to the car making the commission of the crime that followed "substantially easier" than if he had to physically break in to the car. *The circumstances fit within the Buggs test for a confinement sufficiently distinct from the underlying crime to be successfully prosecuted as an aggravated kidnapping given J.B.'s undisputed injuries*.

*Id.* at *3–5 (second alteration in original) (emphasis added).

We are not at liberty to second-guess the KCOA's reading of Kansas law in reaching this result—in particular, the KCOA's interpretation of the import of *Buggs* for these facts.[7] *See Wilson*, 562 U.S. at 5 ("[I]t is not the province of a federal

---

[7] Even if this were not so, it would be particularly hazardous to second-guess a Kansas court's application of *Buggs* because, as the KCOA described it, *Buggs* "effectively laid out a totality-of-the-circumstances standard that, unlike a

habeas court to reexamine state-court determinations on state-law questions."
(alteration in original) (quoting *Estelle*, 502 U.S. at 67–68)); *see also Hawes*, 7 F.4th
at 1264 ("[T]he Supreme Court has 'repeatedly held that a state court's interpretation
of state law, including one announced on direct appeal of the challenged conviction,
binds a federal court sitting in habeas corpus.'" (quoting *Bradshaw*, 546 U.S. at 76)).
As such, we find the district court's re-assessment of Kansas kidnapping law here to
be inappropriate.

Even if the district court believed *State v. Cabral* to be "the most apt precedent
by which to consider the application of *Buggs* to [Mr. Sumpter's] conduct in J.B.'s
car," it was not permitted to substitute its own independent assessment of Kansas law
for that of the KCOA. *Sumpter II*, 485 F. Supp. 3d at 1297. Yet that is exactly what
the district court did here. The court engaged in a lengthy discussion regarding its
belief that the KCOA erred in failing to apply *Cabral*, and concluded that, "[t]his
Court does not agree with the state court . . . that such conduct is independent of and
not incidental to [Mr. Sumpter's] sexual assault of J.B." *Id.* at 1296. Indeed, the
district court disregarded the KCOA's interpretation of state law and expressly
purported to predict how the Kansas Supreme Court "would rule"—that the Kansas
Supreme Court would determine that "[Mr. Sumpter's] conduct . . . did not constitute
a separate crime of kidnapping under the *Buggs* standard." *Id.* at 1299.

---

bright-line rule, creates a fuzzy border where close cases turn on seemingly minor
differences." *Sumpter I*, 2019 WL 257974, at *4. Therefore, *Buggs* allows for a
wide range of permissible outcomes.

However, U.S. Supreme Court precedent leaves no room for such analysis—*viz.*, analysis under which habeas courts presume to know better than state courts how to interpret their own state's law. *See Wilson*, 562 U.S. at 5 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (alteration in original) (quoting *Estelle*, 502 U.S. at 67–68)); *Estelle*, 502 U.S. at 67–68 ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). The KCOA clearly held that the "circumstances fit within the *Buggs* test for a confinement sufficiently distinct from the underlying crime to be successfully prosecuted as an aggravated kidnapping." *Sumpter I*, 2019 WL 257974, at \*5. The district court was required to defer to this determination, and so are we.

Therefore, applying § 2254(e)(1)'s presumption of correctness to the KCOA's factual determinations and deferring to the KCOA's interpretation of Kansas law—even under de novo review—we conclude that there is no basis to disturb the KCOA's determination that Mr. Sumpter confined J.B. by force to facilitate his intent to rape her and that she suffered bodily harm as a result. Consequently, there is no ground to disturb the KCOA's conclusion that there was sufficient evidence to support Mr. Sumpter's aggravated kidnapping conviction and that any challenge on the basis of the sufficiency of the evidence would have lacked merit. Given this, the KCOA likewise correctly concluded that there was no reasonable probability of a

different outcome had Mr. Sumpter's trial or appellate counsel raised a sufficiency of the evidence challenge to the aggravated kidnapping conviction and that, therefore, Mr. Sumpter was not prejudiced under *Strickland* by his counsel's failure to present such a challenge.  Accordingly, even under de novo review, Mr. Sumpter cannot show ineffective assistance and his claim of this stripe was properly rejected by the KCOA.

## IV

### A

Mr. Sumpter posits that he was not required to obtain a certificate of appealability for his claims comprising his cross-appeal.  *See* Aplee.'s Resp. Br. at 48.[8]  Specifically, he argues "that a COA is only in play when a prisoner 'take[s]' 'an

---

[8]    Though the language of the COA statute—28 U.S.C. § 2253(c)—could reasonably be read as requiring both prisoners and state parties to secure COAs to appeal from final judgments in § 2254 proceedings, it is well-settled that the COA requirement is not applicable to states (nor the federal government in § 2255 proceedings).  *See* FED. R. APP. P. 22(b)(3) ("A certificate of appealability is not required when a state or its representative or the United States or its representative appeals."); *id.* advisory committee's note to 1967 adoption (noting, as to an earlier version of the rule discussing the pre-AEDPA, analogous requirement of a certificate of probable cause that "[a]lthough 28 U.S.C. § 2253 appears to require a certificate of probable cause even when an appeal is taken by a state or its representative, the legislative history strongly suggests that the intention of Congress was to require a certificate only in the case in which an appeal is taken by an applicant for the writ"); *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998) ("We hold that the United States has the right to appeal a final order in a proceeding under § 2255 and need not obtain a certificate of appealability.  Thus we have jurisdiction, and hence deny defendant's motion to dismiss the government's appeal."); *see also* 2 Randy Hertz & James S. Liebman, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 35.4[b] (2021) ("Sections 2253(a) and 2253(c)(1) seem to say that a certificate of appealability is needed in all section 2254 and 2255 appeals, apparently including ones by the state or federal government as well as by the prisoner, but Fed. R. App.

39

appeal.'"  *Id.* (alteration in original) (quoting 28 U.S.C. § 2253(c)(1)).  Furthermore,

he claims that the Supreme Court has expressed skepticism of "the utility of the COA

requirement in [a cross-appeal] because [a COA] is intended to fill a gate-keeping

function."  *Id.*  In a cross-appeal, because the "State has properly noticed an appeal of

the grant of habeas relief . . . 'there are no remaining gates to be guarded.'"  *Id.*

(quoting *Jennings v. Stephens*, 574 U.S. 271, 282 (2015)).

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues

a certificate of appealability, an appeal may not be taken to the court of appeals."

The following subsection, § 2253(c)(2), further provides that "[a] certificate of

appealability may issue under paragraph (1) only if the applicant has made a

substantial showing of the denial of a constitutional right."  Although the COA

"performs an important gate-keeping function," the Supreme Court has noted that

"[i]t is unclear whether [the COA] requirement applies to a habeas petitioner seeking

to cross-appeal in a case that is already before a court of appeals."  *Jennings*, 574

U.S. at 282.

The Third Circuit answered this question in the affirmative—*viz.*, it held that

prisoners filing a cross-appeal are required to secure a COA for their claims.  *See*

*Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 474 (3d Cir. 2017).

---

P. 22(b) as amended by AEDPA in 1996 and thereafter revised by the Supreme Court
in 1998 and 2009 exempts the 'state or its representative' and 'the United States or its
representative' from the need to obtain a COA in order to appeal.").  Therefore, the
only question here is whether a prisoner, like Mr. Sumpter—when filing a cross-
appeal to a state's appeal, which does not require a COA—is subject to the COA
requirement.

Because a COA requires an applicant to show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" the court concluded, "[w]e perceive no reason to set aside this obligation merely because the petitioner's claims happen to arrive by way of cross-appeal." *Id.* (omission in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The court explained that "in this context too [a COA] can serve its intended purpose of 'screen[ing] out issues unworthy of judicial time and attention and ensur[ing] that frivolous claims are not assigned to merits panels,' a 'gatekeeping function' that is satisfied '[o]nce a judge has made the determination that a COA is warranted and resources are deployed in briefing and argument.'" *Id.* (second, third, and fourth alterations in original) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 145 (2012)).

The Third Circuit is not alone: a majority of the circuit courts that have ruled on the issue have reached a similar conclusion.  *See, e.g.*, Brian R. Means, FEDERAL HABEAS MANUAL § 12:73, Westlaw (database updated May 2022) ("Even if the prisoner obtains a writ in the district court, a majority of courts have concluded that he must obtain a COA in order to proceed on a cross-appeal.").  For example, prior to the Supreme Court's *Jennings* decision (cited *supra*)—which indicated that whether prisoners needed COAs for their cross-appeal claims was an open issue—the Second Circuit similarly opined, saying "we conclude that a habeas petitioner to whom the writ has been granted on one or more grounds may not assert, in opposition to an appeal by the state, any ground that the district court has not adopted unless the

41

petitioner obtains a certificate of appealability permitting him to argue that ground." *Grotto v. Herbert*, 316 F.3d 198, 209 (2d Cir. 2003). Further, the Ninth Circuit agreed with the Second Circuit and explained, "[a]llowing a successful habeas petitioner to expand the scope of habeas review by adding claims other than those expressly held to be meritorious would thwart AEDPA's goal of limiting habeas review to those claims where 'the petitioner makes a substantial showing of the denial of a constitutional right.'" *Rios v. Garcia*, 390 F.3d 1082, 1087 (9th Cir. 2004) (quoting *Grotto*, 316 F.3d at 209). On the other hand, the Seventh Circuit has determined that a COA is not required for claims arising from a prisoner's cross-appeal. Specifically, the Seventh Circuit reasoned that "once a case is properly before the court of appeals . . . there are no remaining gates to be guarded." *Szabo v. Walls*, 313 F.3d 392, 398 (7th Cir. 2002).

Amongst the circuits that have ruled on the COA issue, the Seventh Circuit appears to be the sole outlier, and we believe that its reasoning is at odds with the principles underlying the habeas regime. The gates of AEDPA are designed to bar the doors of appellate courts to frivolous or otherwise woefully inadequate prisoner claims by requiring those claims to clear the hurdle of a COA; this statutory objective is not materially altered simply because the claim arrives clothed in a cross-appeal. *Cf. Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) ("By enacting AEDPA . . . Congress confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not. It follows that issuance of a COA must not be *pro forma* or a matter of course"). By not requiring

42

prisoner litigants to make a "substantial showing of the denial of a constitutional right" for their claims that have not already secured relief, we would be hindering AEDPA's goal of preventing habeas litigants from needlessly taxing courts' judicial resources and time. *See Banister v. Davis*, ---U.S.----, 140 S. Ct. 1698, 1707 (2020) ("AEDPA aimed to prevent serial challenges to a judgment of conviction, in the interest of reducing delay, conserving judicial resources, and promoting finality.").

Therefore, we join the majority of circuits that have ruled on the issue in concluding that the COA requirement applies to claims that habeas petitioners present via cross-appeal. Accordingly, Mr. Sumpter needs a COA for his remaining claims.

**B**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for COA." *Pacheco v. El Habti*, 48 F.4th 1179, 1192 (10th Cir. 2022) (quoting *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004)). Therefore, "[a]t the COA stage . . . we only ask whether the [d]istrict [c]ourt's application of AEDPA deference . . . to a claim was debatable

43

amongst jurists of reason." *Dockins*, 374 F.3d at 938 n.1 (second omission in original) (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004)).

**1**

Mr. Sumpter first seeks a COA for his claim that he was denied his rights under the Sixth Amendment because the jury venire did not include any African Americans. *See* Aplee.'s Resp. Br. at 49. The district court concluded that the KCOA correctly identified the governing law—*Berghuis v. Smith*, 559 U.S. 314 (2010)—and reasonably applied it to Mr. Sumpter's claim. *Sumpter II*, 485 F. Supp. 3d at 1305–06. We do not find the district court's application of AEDPA deference to the KCOA's decision to be debatable amongst jurists of reason.

First, Mr. Sumpter agrees that the governing law was *Berghuis*, which the district court correctly determined that the KCOA identified and applied. *See* Aplee.'s Resp. Br. at 49–50; *Sumpter II*, 485 F. Supp. 3d at 1305. Thus, the district court's conclusion that the KCOA's decision was not "contrary to" clearly established federal law is not reasonably debatable. Further, the district court concluded that the KCOA reasonably applied *Berghuis*, when it determined "that [Mr. Sumpter] had not presented any evidence that African-Americans were routinely or systematically underrepresented on jury venires in that county." *Sumpter II*, 485 F. Supp. 3d at 1306. Operating under the deferential AEDPA standard, we do not believe that the district court's assessment of the reasonableness of the KCOA's application of *Berghuis* is open to debate by reasonable jurists. Accordingly, we **deny a COA** as to this claim.

44

**2**

Next, Mr. Sumpter seeks a COA for his claim that his appellate counsel was constitutionally deficient in failing to argue instances of prosecutorial misconduct. *See* Aplee.'s Resp. Br. at 53–60. The district court denied Mr. Sumpter's request, finding that the KCOA clearly demonstrated that such an appeal would have failed under Kansas law. *See Sumpter II*, 485 F. Supp. 3d at 1302. Therefore, the district court concluded that Mr. Sumpter could not establish *Strickland* prejudice. *See id.* Mr. Sumpter has not demonstrated that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.

First, Mr. Sumpter claims that appellate counsel should have argued that the prosecutor misstated the intent element for attempted rape by equating it with a mere intent to have sex with the victim. Specifically, in his closing argument, the prosecutor stated:

> And he told you what his intent was with [J.B.]. [Mr. Sumpter] minimizes it and says well, I didn't go into that car with the intent to have sex with her. But clearly he told you on the stand, I was going to have sex with her, I thought, I thought she wanted it. Clearly he intended to have sex. I don't have to prove rape occurred, I don't have to prove sex occurred, I have to prove he took her—or I'm sorry, he confined her with the intent to commit sex, commit rape against her. Clearly that was his intent, he told you even yesterday that's what he intended to do.

Jt. App., Vol. VIII, at 1653–54.

The district court noted that the "KCOA concluded that this 'slip' did not constitute misconduct, as the prosecutor merely 'misspoke, realized as much, and

45

immediately offered a revised statement of the law to the jurors.'" *Sumpter II*, 485 F. Supp. 3d at 1302. Moreover, the district court noted that earlier in the prosecutor's closing argument, the prosecutor had correctly stated the law as:

> I have to prove that he intended to commit the crime of rape.
> I don't have to prove rape occurred. I have to prove that he
> intended to commit it.

*Id.* at 1302–03; Jt. App., Vol. VIII, at 1624. Taken together, the district court concluded that Mr. Sumpter "ha[d] not shown that an appeal based on such a claim of prosecutorial misconduct would have succeeded." *Sumpter II*, 485 F. Supp. 3d at 1303. In particular, as the district court analyzed the matter, "[t]he KCOA reasonably concluded that the misstatement at issue did not constitute misconduct, and [Mr. Sumpter] ha[d] not shown that the KCOA . . . would have found misconduct to such a degree to require reversal of [Mr. Sumpter's] conviction for attempted rape of J.B." *Id.* Accordingly, the district court's refusal to grant a COA as to Mr. Sumpter's claim that his counsel was ineffective for failing to challenge this ostensible prosecutorial misconduct is not subject to debate by reasonable jurists.

Mr. Sumpter also claims that the prosecutor inaccurately described his pro se pretrial motion as including an admission that he committed lesser-included offenses. *See* Aplee.'s Resp. Br. at 58–60. The district court noted that the KCOA did find that the prosecutor misrepresented the nature of Mr. Sumpter's motion. *See Sumpter II*, 485 F. Supp. 3d at 1303. Nevertheless, the district court stated that "the KCOA, applying standards set forth by the Kansas Supreme Court for claims of prosecutorial misconduct, concluded that the prosecutor's misrepresentation had not been flagrant

46

or born of ill will, and that it was not so significant to have had a material effect on the verdicts." *Id.*  In light of the KCOA's conclusion, the district court effectively determined that the KCOA acted reasonably in rejecting on the basis of lack of prejudice a claim of ineffective assistance of appellate counsel stemming from counsel's failure to challenge the prosecutor's lesser-included-offense misrepresentation.  We do not believe that reasonable jurists would debate this determination.

For the foregoing reasons, we **deny a COA** to Mr. Sumpter to pursue his claim that appellate counsel was constitutionally deficient in failing to argue instances of prosecutorial misconduct.

**3**

Finally, Mr. Sumpter seeks a COA for his claim that his trial counsel's performance was constitutionally deficient because trial counsel repeatedly sought continuances without Mr. Sumpter's consent, thereby forfeiting Mr. Sumpter's speedy trial rights.  *See* Aplee.'s Resp. Br. at 60–61.  In rejecting Mr. Sumpter's claims, the district court first noted that the basis of Mr. Sumpter's claim arose under the Kansas Speedy Trial Act.  *See Sumpter II*, 485 F. Supp. 3d at 1304.  Therefore, it was bound by the KCOA's interpretation of the statute.  *See id.*; *see also Bradshaw*, 546 U.S. at 76.

The KCOA, relying on Kansas Supreme Court precedent, rejected Mr. Sumpter's *Strickland* claim, as it found that the Kansas speedy trial statute did not require reversal of his convictions.  *See Sumpter I*, 2019 WL 257974, at \*13.

47

Specifically, the KCOA held that because Mr. Sumpter's counsel requested the

continuances, that delay would not have been charged against the prescribed speedy

trial period (i.e., the running of the speedy trial clock would have been tolled)—even

if the continuances were later deemed improper because Mr. Sumpter had not been

consulted. *See id.* As such, there could not have been any prejudice to Mr. Sumpter

within the meaning of *Strickland* from counsel's failure to request that Mr. Sumpter's

convictions be set aside on the basis that Mr. Sumpter was not consulted regarding

the continuances. *Id.* Giving deference to the KCOA's interpretation of state law,

the district court found no reason to conclude that the KCOA unreasonably applied

*Strickland* in denying Mr. Sumpter's claim on the ground of lack of prejudice. We

conclude that reasonable jurists would not find the district court's assessment of Mr.

Sumpter's constitutional claim to be debatable or wrong.

Mr. Sumpter further attacks the KCOA's limitations decision by arguing that

the state court failed to address his argument that his trial counsel violated a duty of

loyalty to him.[9] *See* Aplee.'s Resp. Br. at 60–61. Mr. Sumpter claims that trial

counsel was acting pursuant to a conflict of interest because if counsel had raised the

---

[9]    The district court noted that "it is not clear that [Mr. Sumpter] satisfied his exhaustion requirement by presenting this [duty of loyalty] argument fully to the state courts." *Sumpter II*, 485 F. Supp. 3d at 1305 n.6. That would mean that, to the extent that the KCOA failed to consider the argument, the fault lies with Mr. Sumpter. Nevertheless, given that the district court found no merit in the argument, even if the argument was not exhausted, the court was free to deny it on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

issue after-the-fact, counsel would have been required to admit her mistake in seeking the continuances without Mr. Sumpter's consent. *See id.* at 60. As such, Mr. Sumpter argues that prejudice may be presumed under *Strickland*. *See id.* at 60–61. However, the district court noted that *Strickland* does not establish a per se rule of prejudice for conflicts of interest. *See Sumpter II*, 485 F. Supp. 3d at 1304–05. Instead, "[p]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 692). And, having discerned that Mr. Sumpter failed to show both that trial counsel was actively representing conflicting interests and that those alleged conflicts actually affected trial counsel's performance, the district court concluded that Mr. Sumpter had not established that any KCOA decision to deny this claim was at odds with *Strickland*. We cannot say reasonable jurists would conclude that the district court's determination on this point was debatable or wrong.

Therefore, we **deny a COA** to Mr. Sumpter on his claim stemming from an alleged violation of Mr. Sumpter's speedy trial rights.[10]

---

[10]    Given that Mr. Sumpter has failed to present a "reasoned, nonfrivolous argument on the law and facts in support of the issues raised on [cross-appeal]," *Caravalho v. Pugh*, 177 F.3d 1177, 1177 (10th Cir. 1999), we **deny** his renewed motion to proceed *in forma pauperis*.

**V**

For these reasons, we **REVERSE** the district court's judgment granting habeas relief to Mr. Sumpter and **REMAND THE CASE** with instructions for the court to enter judgment for the State of Kansas.  Furthermore, we **DENY** Mr. Sumpter a COA to pursue the claims asserted in his cross-appeal and, accordingly, **DISMISS** his cross-appeal for lack of jurisdiction.[11]

---

[11]    We also **deny** Mr. Sumpter's Motion for Leave to File a Sur-Reply.  The State filed its Third Brief on Cross-Appeal on June 9, 2021.  Under Federal Rule of Appellate Procedure 28.1(f)(4), Mr. Sumpter had twenty-one days to file a reply brief, but he failed to do so.  Mr. Sumpter cannot now seek to undo his error by filing an untimely sur-reply.